# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORRAINE FUENTES,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br><br>        Defendant. | No. EDCV 08-01306 AGR<br><br>MEMORANDUM OPINION AND ORDER |

      Plaintiff Lorraine Fuentes ("Fuentes") filed a Complaint on October 2, 2008. (Dkt. No. 3.) Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before Magistrate Judge Rosenberg on October 28 and November 19, 2008. (Dkt. Nos. 8-9.) The parties filed a Joint Stipulation ("JS") on July 22, 2009, that addresses the disputed issues in the case. (Dkt. No. 17.) The Commissioner filed the certified administrative record ("AR"). The Court has taken the Joint Stipulation under submission without oral argument.

      Having reviewed the entire file, the Court concludes that the decision of the Commissioner is affirmed.

///

///

# I.

# PROCEDURAL BACKGROUND

On May 25, 2006, Fuentes filed an application for supplemental security insurance benefits ("SSI"), alleging an onset date of January 1, 1999. AR 9, 71-73. The Commissioner denied the application initially and on reconsideration. AR 45-46. Fuentes requested a hearing. AR 61-65. On February 5, 2008, the Administrative Law Judge ("ALJ") conducted a hearing at which Fuentes and a vocational expert testified. AR 19-42. On March 14, 2008, the ALJ issued a decision denying benefits. AR 6-18. Fuentes requested review. AR 5. On August 5, 2008, the Appeals Council denied review. AR 1-3. This lawsuit followed.

# II.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation and quotation marks omitted); *Moncada*, 60 F.3d at 523; *see also Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523.

//

# III.

# EVALUATION OF DISABILITY

### A. Disability

A person qualifies as disabled and is eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

The ALJ found that Fuentes "has the following severe impairments: bipolar disorder, anxiety disorder, alcohol dependence in possible remission, and a history of substance abuse." AR 11. She has the residual functional capacity ("RFC") "to perform simple, repetitive, entry level work at all exertional levels. She is limited to working with things, rather than people, and is precluded from work on dangerous machinery." AR 12. Fuentes "is capable of performing past relevant work as a stock checker or warehouse worker." AR 16. Even if she had no past relevant work, "there are jobs that exist in significant numbers in the national economy that [Fuentes] can perform . . . ." AR 16-17. These include kitchen helper, hand packer and industrial cleaner. AR 17.

### C. Dr. Nguyen's Opinion

Fuentes argues that the ALJ summarized the opinion of Dr. Nguyen, a treating psychiatrist, without indicating whether the ALJ accepted or rejected that opinion. JS 6.

The opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough

1  summary of the facts and conflicting clinical evidence, stating his interpretation thereof,
2  and making findings." *Id.* at 632 (citations and quotations omitted).
3       The ALJ expressly noted Dr. Nguyen's diagnosis of bipolar disorder, not
4  otherwise specified, and a GAF score of 48 on June 22, 2006. AR 14. The record
5  indicates that Dr. Nguyen met Fuentes only once. AR 268-70. Dr. Nguyen noted that
6  Fuentes' appearance and hygiene were within normal limits; her behavior was
7  aggressive/agitated; her speech was rapid, pressured and loud; and her mood/affect
8  was angry/irritable, anxious and labile. AR 269. Her perceptual process was within
9  normal limits; her thought content was within normal limits but with paranoid/
10 persecutory aspects (with the annotation that Fuentes "doesn't trust people, they're
11 going to do bad things to me"), her insight and judgment were fair; her memory was
12 recent; and she was oriented times four. *Id.*
13      Although Fuentes argues that the ALJ did not indicate whether he accepted or
14 rejected Dr. Nguyen's opinion, the ALJ included bipolar disorder in his list of severe
15 impairments. AR 11. However, "the mere existence of an impairment is insufficient
16 proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). A claimant
17 must show that she is precluded from engaging in substantial gainful activity by reason
18 of her impairments. *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).
19      The ALJ found that "a review of the record in this case reveals no restrictions
20 recommended by any treating source," which includes Dr. Nguyen. AR 14. Fuentes
21 has not identified any work restrictions in Dr. Nguyen's opinion. JS 7; *see* AR 268-70;
22 *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 601 (9th Cir. 1999) (treating physician did
23 not explain how patient's characteristics precluded work activity in his or her case).
24 Accordingly, there were no work restrictions that the ALJ had to accept or reject. The
25 ALJ did discuss Fuentes' GAF score. AR 15. The ALJ found no evidence that "a
26 particular GAF score means a particular limitation in work ability." *Id.* The ALJ did not
27 err. A GAF score is not determinative of mental disability for Social Security purposes.
28 *See* 65 Fed. Reg. 50746, 50765 (August 21, 2000) ("[The GAF scale] does not have a

direct correlation to the severity requirements in our mental disorder listings.");
*McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008).

      Fuentes cannot show any inconsistency between Dr. Nguyen's opinion and her RFC, which limited her to "simple, repetitive, entry level work" and "working with things, rather than people." AR 12. The ALJ relied on the opinion of examining psychiatrist Dr. Linda Smith. AR 15, 279-87. Dr. Smith diagnosed alcohol abuse, unclear current status; amphetamine abuse, unclear current status; mood disorder, not otherwise specified; and mixed personality traits, primarily antisocial and narcissistic. AR 286. Fuentes was neatly groomed, had good eye contact with fair interpersonal contact, and a generally cooperative demeanor. AR 284. She appeared manipulative and had obvious narcissistic and antisocial Axis II traits. *Id*. Her thought processes were coherent, organized, and showed no evidence of a thought disorder or psychosis. *Id*. She reported that her mood was variable and somewhat depressed; however, her affect was full and animated. *Id*. Fuentes had at least average intelligence, and could recall two items after five minutes without a hint and three items with hints.[1] AR 285. Fuentes could do simple math and spelling problems and followed the conversation well. *Id*. Insight and judgment were fair regarding her current situation. *Id*.

      Functionally, Dr. Smith opined that Fuentes is not impaired in her ability to understand, remember or complete simple commands; interact appropriately with supervisors, co-workers, or the public; comply with job rules such as safety and attendance; respond to change in the normal workplace setting; or maintain persistence and pace in a normal workplace setting. AR 287. When asked if she could do household chores, Fuentes chuckled and said: "I can do 'em but I choose not to so I let

---

[1] Fuentes argues that Dr. Nguyen found that her recent memory was impaired. JS 11; AR 269. However, there is no showing that Dr. Nguyen's check-the-box form is inconsistent with Dr. Smith's memory findings or an RFC limiting Fuentes to simple, repetitive, entry-level work.

1  'em sit until he[2] does them and I don't clean bathrooms either because they're too dirty!"
2  AR 283.  Fuentes said that she does not pay her own bills because she spends her
3  money on things she wants.  *Id.*  Fuentes laughed about taking advantage of people,
4  and chuckled while describing her altercations with people at work.  AR 286.  Dr. Smith
5  concluded that, "At this point I really do not believe she would be impaired in her ability
6  to work if she gave fair effort and if she abstained from substances."  *Id.*  The ALJ noted
7  the consistent opinions of two state agency psychiatrists.  AR 14-15.

The ALJ did not err.

### D.   Clinicians' Opinions

Fuentes argues that the ALJ did not explain his disregard for the opinions of Ms. Garcia, a marriage and family therapist, and Ms. Banker, a social worker.  JS 12; AR 271, 276, 315.

Fuentes first contends that Ms. Garcia and Ms. Banker could be considered treating sources "if they were working in conjunction with a psychiatrist, such as Dr. Nguyen and Dr. Chatsuthiphan."  JS 12 (citing *Benton v. Barnhart*, 331 F.3d 1030, 1037-39 (9th Cir. 2003)).  There is nothing in the records to indicate that Ms. Garcia worked with Dr. Nguyen.  Ms. Garcia filled out intake forms on May 22, 2006, approximately one month before Dr. Nguyen saw Fuentes.  AR 271-78, 322-26; *Benton*, 331 F.3d at 1037.  Ms. Banker's name appears only once in May 2007.  AR 315.  There is no indication that she worked with Dr. Chatsuthiphan, who saw Fuentes three months earlier on February 14, 2007.  AR 314, 320.  The record closing Fuentes' file indicates that Fuentes was triaged on February 14, 2007 and started on medications by Dr. Chatsuthiphan.  Fuentes was scheduled for a psychological evaluation by Dr. Mejia in February 2007 but did not show up.  Fuentes "had no further contact with this Clinic."  AR 319.  The file was closed on May 16, 2007.  *Id.*  Thus, it does not appear that Ms. Banker ever saw Fuentes or participated in her treatment.

---

[2]  Fuentes reported living with her boyfriend and his aunt.  AR 283.

Even assuming Ms. Garcia and Ms. Banker could be considered treating sources, the ALJ did not err. As discussed above, the ALJ included the diagnosis of bipolar disorder and substance abuse at Step Two. AR 11, 273, 315. Ms. Garcia noted that Fuentes "needs work." AR 278. Ms. Garcia referred Fuentes for a medical evaluation, presumably from Dr. Nguyen. AR 274, 276. Ms. Garcia found that Fuentes was oriented, she had average intellectual functioning, and her speech and thought processes were within normal limits. AR 276. Ms. Garcia noted that Fuentes' insight was fair, her judgment was poor, and her mood was stable. *Id.* Garcia also noted poor short-term memory and poor concentration. *Id.* The ALJ's notation that none of the treating sources placed work restrictions on Fuentes would apply equally to Ms. Garcia and Ms. Banker. JS 14. The ALJ's notation that Fuentes had been assessed GAF scores in the 40's "by various sources" would also apply equally to Ms. Garcia and Ms. Banker,[3] as would the ALJ's conclusion that a GAF score does not necessarily translate into a particular limitation on work ability. AR 15, 271, 315.

### E.   ALJ's Hypothetical Question To The Vocational Expert

The ALJ may rely on testimony a vocational expert ("VE") gives in response to a hypothetical that contains "all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). The ALJ is not required to include limitations that are not in his findings. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

At the hearing, the ALJ posed two hypothetical questions to the VE:

---

[3] The ALJ noted that the GAF scores "have been from social workers, family therapists" or others "who evaluated the claimant one time." AR 15. Contrary to Fuentes' argument, the ALJ appears to have read and considered the opinions of social workers and family therapists. His failure to identify each social worker and family therapist by name is not error. Moreover, any error would be harmless. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").

> Assume a hypothetical individual of [Fuentes'] age, education, and prior work experience. Assume this person has no exertional - - could work at a very heavy exertional level. No work on dangerous machinery. Routine, repetitive tasks, entry-level work, working with things rather than with people. Could such a hypothetical individual perform [Fuentes'] past work?
>
> *   *   *
>
> Is there other work that could be performed?

AR 40. The VE responded that the hypothetical individual could perform Fuentes' past work of stock checker and warehouse worker, *id.*, and other work including kitchen helper, hand packager and industrial cleaner. AR 41.

Fuentes contends that the hypothetical questions were inadequate because the ALJ did not include the details of her mental status examinations. JS 15. However, it is for the ALJ to determine Fuentes' RFC. Here, the ALJ translated Fuentes' mental impairments into work restrictions limited to simple, repetitive, entry-level work . AR 12. He did so based on Dr. Smith's functional assessment. Contrary to Fuentes' argument, the hypothetical does not constitute a rejection of an opinion by a treating source, none of whom translated Fuentes' impairments into work restrictions. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ's hypothetical adequately captures restrictions when it is consistent with medical testimony that claimant with mental impairments retained ability to do simple, repetitive tasks).

## IV.

## **CONCLUSION**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: January 28, 2010

_____
ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE